**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>REAL PROPERTY LOCATED AT 8 DRIFT STREET, NEW BRUNSWICK, NEW JERSEY, et al.,<br><br>　　　　　Defendants in rem. | Civil Action No. 14-3587 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

　　This is a civil action in rem for the forfeiture of the defendant properties pursuant to 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C). Presently before the Court are several motions. On January 20, 2015, Claimants Gengwu Qiu ("Gengwu"), 52 BD, Inc. ("52 BD"), and TravelHome 1405, LLC ("TravelHome") (collectively, "Claimants") moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing that the claimed assets were not derived from the alleged crimes. (ECF No. 29.) On February 2, 2015, Plaintiff United States of America (the "Government") moved for summary judgment to strike the claims of Claimants Gengwu and 52 BD for lack of standing pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 31.) On April 8, 2015, Claimants filed an amended motion for summary judgment additionally arguing that the alleged crimes, on which forfeiture is based, did not occur. (ECF No. 42.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Government's

motion for summary judgment to strike the claims of Gengwu and 52 BD is denied, and Claimants' motion, and amended motion, for summary judgment are denied as premature.

I. **Background**

The Government seeks forfeiture of certain real property and currency from three bank accounts, which allegedly are proceeds from the transportation, transmittal, or transfer of money from China to the United States by Gengmin Qiu ("Gengmin") that he knew was stolen, converted, or taken by fraud in violation of 18 U.S.C. § 2314.

Gengwu, 52 BD, and TravelHome filed verified claims in the instant matter and assert an interest in certain defendant properties. (ECF Nos. 14, 16, 22.) Specifically, Claimant Gengwu, the brother of Gengmin, asserts an interest in the real property located at 1405 South Ocean Boulevard, Myrtle Beach, South Carolina ("Myrtle Beach Property"), and in the currency in the following bank accounts: (1) Cathay Bank account number 665931796, held in the name of 52 BD ("52 BD 1796"); (2) Cathay Bank account number 675981237, held in the name of Gengwu Qiu ("Gengwu 1237"); and (3) Cathay Bank account number 665934436, held in the name of Gengwu Qiu ("Gengwu 4436"). (Verified Claim of Gengwu Qiu ("Gengwu Claim") ¶¶ 2-5, ECF No. 14.) Claimant 52 BD, through Gengwu, the sole owner since September 5, 2011, asserts an interest in the currency seized from the 52 BD 1796 account. (Verified Claim of 52 BD, Inc. ("52 BD Claim") ¶¶ 2-3, ECF No. 16.) TravelHome, through Judy Tang, a member and the manager of TravelHome, asserts an interest in the Myrtle Beach Property as the legal and record owner of the real property. (Verified Claim of TravelHome 1405, LLC ("TravelHome Claim") ¶¶ 2-3, ECF No. 22.)

The Government asserts that the defendant properties are subject to forfeiture because they are proceeds derived from Gengmin's alleged crimes. (*See generally* Verified Compl., ECF No.

1.) Gengmin was the owner of a Chinese company, Zhejiang Changda Import and Export Co., Ltd. ("Changda"). (*Id.* ¶ 13.) In September 2005, Changda entered into contracts with I.M. Skaugen SE ("Skaugen"), the buyer of three ships, and Taizhou Wuzhou Shipbuilding Industry Co., Ltd. ("Wuzhou"), the shipbuilder, to perform customs work as the import-export agent. (*Id.* ¶¶ 13, 15-16.) China has a form of value added tax ("VAT"). (*Id.* ¶ 14.) The VAT system requires each seller of a product to pay a tax on the value added to the product, and in theory, the ultimate cost of the tax is only passed on to the end consumer. (*Id.* ¶ 14.) China exempts exported goods from VAT, but since sellers have to pay the VAT at each stage of production, the VAT is reimbursed once the good is exported. (*Id.*)

In March 2009, the first ship was delivered to Skaugen, and Changda remitted the VAT rebate, approximately $4 million, to Skaugen in September 2009. (*Id.* ¶ 17.) In October 2009, the second ship was delivered to Skaugen; however, Changda never remitted the VAT rebate to Skaugen.[1] (*Id.* ¶¶ 18, 23.) On or about January 25, 2010, the VAT rebate, RMB[2] 25,113,530.92, or approximately $3.7 million, was transferred from an agency of the government of China to an account at the Agricultural Bank of China ("ABC") held in the name of Changda. (Gov't's Statement of Undisputed Material Facts[3] ("SUMF") ¶ 2, ECF No. 37.) In January and February

---

[1] In May 2010, the third ship was completed and available for delivery. Delivery, however, was delayed because Changda had not assisted with the customs and export requirements. Skaugen resolved the customs issues without Changda, and the third ship was delivered in September 2011. (Verified Compl. ¶ 24.)

[2] Renminbi, abbreviated RMB, is the official currency of mainland China.

[3] Gengwu and 52 BD did not dispute the Government's Statement of Undisputed Material Facts submitted in support of the Government's motion for summary judgment, and therefore, those facts which are properly supported by the record are deemed admitted for purposes of this motion. *See Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010).

2010, Gengmin transferred approximately $1.9 million of the VAT rebate to a bank account in the United States held in the name of BD Global Corp. ("BD Global"), a shell company formed by Gengmin ("BD Global 6099"). (*Id.* ¶ 3; Verified Compl. ¶¶ 20-21.) Subsequently, the monies were completely transferred out of the BD Global 6099 account to other accounts in the United States and used to purchase real and personal property, including the defendant properties. (Verified Compl. ¶ 28.)

On June 14, 2011, Gengwu opened a bank account with ABC ("ABC Gengwu account"), and on the same date, an "interbank transfer" of RMB 3,000,000 was immediately deposited into his account and then was transferred to an account held in the name of Green Stem Trading, LLC, located in Dubai, United Arab Emirates ("Green Stem account"). (*Id.* ¶¶ 5-6.) Also on June 14, 2011, the Green Stem account made the first of seven transfers to a bank account at Cathay Bank in the United States controlled by Gengmin and held in the name of East International Inc. ("East International 6610"). (*Id.* ¶ 7.) Between June and July 2011, a total of RMB 16,800,000, approximately $2,555,850, was transferred from the ABC Gengwu account to the Green Stem account and then to the East International 6610 account. (*Id.* ¶ 10.) Subsequently, the monies were transferred to the accounts of either Gengmin or Gengwu, or companies they controlled, and used to purchase real and personal property in the United States. (Verified Compl. ¶ 28.)

II. **Legal Standards**

    A. **Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "When the moving party . . . does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's . . . evidence is insufficient to carry its burden of persuasion at trial." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995) (citing *Celotex*, 477 U.S. at 323-24). "Thereafter, the nonmoving party creates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for him at trial." *Id.* (citing *Anderson*, 477 U.S. at 248). "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *United States v. $7,599,358.09*, 953 F. Supp. 2d 549, 554 (D.N.J. 2013), *appeal dismissed* (Jan. 10, 2014) (internal quotation marks omitted). To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423.

### B.   Civil Forfeiture Framework

Civil asset forfeiture proceedings are governed by two sets of procedural rules: the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and the Federal Rules of Civil Procedure ("Civil Rules"). *See United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 149 (3d Cir. 2003). "The balance between

5

the two is struck in favor of the Supplemental Rules, which always apply to civil forfeiture proceedings." *Id.*

"[T]he only initial parties to a civil forfeiture action are the Government, as the plaintiff, and the property the Government seeks to forfeit, as the defendant." *United States v. $263,327.95*, 936 F. Supp. 2d 468, 471 (D.N.J. 2013). "Any individual or entity that wishes to assert a claim to the property can do so only by intervening in the action as a claimant." *Id.* To invoke the Court's jurisdiction, a claimant must establish it has both statutory and Article III standing to contest a civil forfeiture. *$8,221,877.16 in U.S. Currency*, 330 F.3d at 150 n.9. Supplemental Rule G(8)(c) provides that "the government may move to strike a claim or answer . . . because the claimant lacks standing" and that the motion "may be presented . . . by summary judgment [to determine] whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G(8)(c). Once a claimant has established standing, the Government must show by a preponderance of the evidence that the property at issue is subject for forfeiture. 18 U.S.C. § 983(c)(1). Standing, however, is a threshold issue, and courts must determine standing before addressing any other issue. *See, e.g.*, *United States v. $263,327.95*, 936 F. Supp. 2d 468, 471 (D.N.J. 2013).

Accordingly, this Court must address the Government's summary judgment motion as to standing before addressing Claimants' motions for summary judgment that the property at issue is not subject to forfeiture.

### III.    The Government's Motion for Summary Judgment

Here, the Government is not seeking dismissal based on Gengwu and 52 BD's lack of statutory standing, but instead moves to strike their claims because they have failed to establish Article III standing.

### A. Article III Standing

"Article III standing is commonly associated with an inquiry into injury-in-fact, causation, redressability and other prudential factors, but the inquiry is more focused in forfeiture cases." *United States v. Contents of Accounts Nos. 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974, 985 (3d Cir. 1992) (internal citation omitted). "To prove standing, [a claimant] must show that he has a colorable ownership or possessory interest in the funds." *Mantilla v. United States*, 302 F.3d 182, 185 (3d Cir. 2002). However, "[c]ourts generally do not deny standing to a claimant who is either the colorable owner of the *res* or who has any colorable possessory interest in it." *Contents of Accounts Nos. 3034504504 & 144-07143*, 971 F.2d at 985. Where a claimant asserts an interest in more than one of the defendant properties, the claimant "must establish his standing as to each." *Mantilla*, 302 F.3d at 185 (citing *Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000)).

"[A]t the summary judgment stage, a claimant must prove by a preponderance of the evidence that he has a facially colorable interest in the *res* such that he would be injured if the property were forfeited to the United States." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008). "This threshold burden is not rigorous: To have standing, a claimant need not prove the underlying merits of the claim." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003) (internal quotation marks omitted); *see also De Saro v. United States*, 173 F. App'x 760, 764 (11th Cir. 2006) ("Courts have repeatedly cautioned against confusing the constitutional standing inquiry with the determination on the merits of the forfeiture action."). "Although a claimant must make an initial evidentiary showing of such an interest, a claimant need not definitively prove the existence of that interest." *$148,840.00 in U.S. Currency*, 521 F.3d at 1273 (citing *United States v. $577,933.89, More or*

*Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002) ("[T]he only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required 'facially colorable interest,' not whether he [or she] ultimately proves the existence of that interest.")). "The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices." *De Saro*, 173 F. App'x at 764. Thus, "the district court must ask itself whether 'a fair-minded jury' could find that the claimant had standing on the evidence presented." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (citing *Anderson*, 477 U.S. at 252).

Although a claim of ownership with some supporting evidence is typically enough to establish standing, possession of mere legal title is insufficient to establish standing where claimant is only a nominal or straw owner. *Contents of Accounts Nos. 3034504504 & 144-07143*, 971 F.2d at 985 ("[C]ourts have uniformly rejected standing claims put forward by nominal or straw owners. . . ."); *see also Mantilla*, 302 F.3d at 185 (A nominal or straw owner's assertion of an interest "without some explanation or contextual information regarding the claimant's relationship to the seized property [is] insufficient to establish standing." (internal quotation marks omitted)). "The rationale for this rule is to prevent individuals engaged in illegal activities from hiding their assets and circumventing the forfeiture laws by placing the legal title to property in another's name." *United States v. Premises & Real Prop. with Bldgs., Appur. & Improv. at 191 Whitney Pl.*, No. 980060, 2000 WL 1335748, at *1 (W.D.N.Y. Sept. 7, 2000); *United States v. $100,000 in U.S. Currency*, No. 13-21831, 2014 WL 1330845, at *3 (S.D. Fla. Mar. 28, 2014), *appeal dismissed* (Mar. 20, 2015) ("[T]he law is plain that the opening of an account by one person in order to transfer money to another person is insufficient to confer standing on the account holder."). Thus, it is the claimant's burden to come forward with some evidence to show he "exercised dominion

and control over the" defendant property. *Contents of Accounts Nos. 3034504504 & 144-07143*, 971 F.2d at 986; *see also Mantilla*, 302 F.3d at 185 (claimant must come forward with evidence "from which a reasonable trier of fact" could discern his interest).

**B.     Analysis**

The Government argues that Gengwu and 52 BD do not have Article III standing because they are unable to demonstrate they have an actual ownership interest in the claimed defendant properties since they are mere nominees. The Government argues that Gengwu and 52 BD cannot establish dominion or control over the defendant properties because all the funds have been commingled with funds of Gengmin's and transferred amongst various accounts such that they cannot demonstrate that the funds remaining in the subject accounts came from the funds Gengwu originally transferred to the United States. In further support of their argument, the Government relies on the lack of information Gengwu provided in response to the special interrogatories propounded by the Government and Gengwu's prior inconsistent explanation as to the source of the funds Gengwu and 52 BD are claiming an interest in. Specifically, the Government asserts that in prior litigation in New York, Gengwu stated that the funds he is currently asserting an interest in had been given to him by his brother, Gengmin, for payment of a loan he made to his brother's company for legal expenses arising out of an arbitration in China; in this litigation, Gengwu asserts the funds were an unexpended portion of investment monies he entrusted to Gengmin to invest in real property in the United States. The Government additionally points to further conflicting statements made by Gengwu in past visa applications. As such, the Government asserts summary judgment should be entered striking the claims of Gengwu and 52 BD because the burden falls on them to establish standing and they have not met that burden.

9

In response, Gengwu and 52 BD argue that Gengwu's verified statements that he is the owner of the defendant properties, taken together with the fact that the funds were seized from bank accounts in Claimants' names, is sufficient to establish standing in response to the Government's motion for summary judgment. In addition, Claimants argue that the Government has failed to establish that Gengwu and 52 BD are mere nominees. To further support that they have standing and are not nominees, Gengwu and 52 BD rely on the declaration of Gengwu and his responses to the Government's special interrogatories, as well as the records from the bank accounts at issue. Furthermore, Gengwu and 52 BD argue that the Government cannot shift its burden of tracing the defendant properties to the proceeds of an unlawful activity onto them by demanding that they prove that the funds they claim an interest in were not derived from the VAT rebate. For the purpose of establishing Article III standing, at this stage in the proceedings, the Court agrees.

The Government does not dispute that Gengwu and 52 BD have legal title to the defendant properties at issue, but instead asserts that they are only nominees. Thus, the issue is whether Gengwu and 52 BD are nominal or straw owners of the property or legal owners who exercised dominion and control. "[T]he government cannot prevent every person unwilling to completely explain his relationship to property that he claims to *own*, and that is found in his possession and control, from merely *contesting* a forfeiture of that property in court." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1276 (10th Cir. 2008). "[O]ur society is one that values both personal property rights and the appropriate judicial resolution of disputes involving those rights." *Id.* Here, it is undisputed that Gengwu transferred approximately $2.5 million from China, through a bank account in Dubai, to a bank account in the United States controlled by Gengmin. (SUMF ¶¶ 5-10.) Thereafter, those funds were transferred and commingled with funds Gengmin had

earlier transferred from China in various accounts in the United States held in the names of Gengwu and Gengmin, as well as various other entities. (*Id.* ¶¶ 16-18.)

Although Gengwu and 52 BD incorrectly assert that Gengwu's verified statement along with their legal title to the defendant properties is sufficient in this case to establish standing at the summary judgment stage, Gengwu and 52 BD have provided sufficient additional evidence to establish standing. As the facts demonstrate when taken in the light most favorable to Gengwu and 52 BD, Gengwu is a self-employed businessman and entrepreneur primarily in the business of the manufacture and sale of welding machines; he owns more than twenty patents on welding machines. (Gengwu's Responses to Plaintiff's Special Interrogatories ("Special Interrogatories") ¶ 14, ECF No. 31-3.) In response to the special interrogatories, Gengwu stated, under penalty of perjury, that the purpose of transferring the approximately $2.5 million to the United States to Gengmin was to invest in real property. (Special Interrogatories ¶ 5.) Gengwu, on the advice of his brother and a friend, decided in 2011 it was a good time to move part of his investment funds to the United States. (Decl. of Gengwu Qiu ("Qiu Decl. I") ¶ 6, ECF No. 29-1.) On or about May 11, 2011, Gengwu sold his seventy percent interest in shares of Taizhou City Bida Industrial and Trading Co., Ltd., a retailer and wholesaler of hardware, plastic products, iron handcrafts, rubber goods, and construction material, for approximately $1.76 million, or RMB 10,570,000. (Special Interrogatories ¶ 14, Ex. E.) Gengwu further stated that the funds were his personal funds and were derived from his business activities. (Special Interrogatories ¶ 5.) Because Gengwu was in China, he gave Gengmin a power of attorney to invest the funds on his behalf. (Special Interrogatories ¶ 5; Qiu Decl. I, Ex. A ("Power of Attorney"), ECF No. 29-2.) Gengmin used the funds transferred to him by Gengwu to invest in the Myrtle Beach Property, and the unexpended funds were ultimately transferred to the three bank accounts at issue. (Special Interrogatories ¶ 5.)

Further, Gengwu stated that he has received statements for the bank accounts and is in possession of the checkbooks, either individually or through an agent.[4] (*Id.* ¶ 7.) At the summary judgment stage, drawing all reasonable inferences in a light most favorable to Gengwu and 52 BD, the above evidence is sufficient to confer standing.

Gengwu and 52 BD have made an unequivocal claim of ownership over the defendant properties at issue and presented evidence of a power of attorney to Gengmin and the sale of significant assets prior to transferring money to the United States. Taken together, these facts are sufficient to show Gengwu had dominion and control over the funds when he transferred them through Dubai and to the United States to Gengmin. Further, the power of attorney shows that Gengwu intended to remain in control of these funds, or the real property they funded, even though they were commingled with Gengmin's funds in numerous bank accounts. At this stage, Gengwu does not need to show where each dollar originated from before it was transferred into the ABC Gengwu account. On the evidence presented, a fair-minded trier of fact could find that Gengwu and 52 BD have standing.

Moreover, the Government's argument as to the lack of information Gengwu provided in response to the special interrogatories is unconvincing because the Government could have moved to compel more specific responses. Additionally, the Government's reliance on Gengwu's prior

---

[4] For the first time in its Reply Brief, the Government argues, and attaches documents in support, (1) that Gengwu was not in the United States at the time when Gengwu 4436 was opened; (2) that the signature of the person who opened Gengwu 4436 was not that of Gengwu; and (3) bank records of Gengwu 1237 establish that debits took place on the account when Gengwu was not in the United States. Although the Government raised these new arguments to rebut Claimants' assertion that no other person signed checks on the accounts or otherwise withdrew funds from the accounts, "this Court has discretion to decline to consider new facts or arguments raised in a reply." *D'Aiuto v. City of Jersey City*, No. 06-6222, 2007 WL 2306791, at *4 (D.N.J. Aug. 8, 2007). Because Claimants have been denied an opportunity to respond to the new arguments raised and the supporting documents, this Court will not consider them in ruling on the pending motion for summary judgment.

inconsistent story and false information on his past visa application only casts doubt on his credibility, and the Court cannot make such credibility determinations on a motion for summary judgment; the Court declines to hold an evidentiary hearing at this time to make such determinations. Furthermore, at this stage, Gengwu and 52 BD need not prove the underlying merits of their claims. "It may well be that forfeiture ultimately will prove appropriate, but [the Court] find[s] it obvious that [Claimants] risk[] injury within the meaning of Article III and thus may have [their] day in court." *$148,840.00 in U.S. Currency*, 521 F.3d at 1276. The Court's conclusion at this juncture only allows Gengwu and 52 BD the ability to contest that their rights to the defendant properties are properly subject to forfeiture; however, this holding does not mean that the Court may not revisit the issue at a later stage in this litigation.

### IV.    Claimants' Motion for Summary Judgment

Claimants move for summary judgment on the grounds that "none of the assets in which they claim interests [sic] constitute or were derived from the proceeds of the alleged crimes on which Plaintiff bases it claims for forfeiture or were otherwise involved in a transaction or attempted transaction in violation of federal law." (Notice of Motion 1, ECF No. 29.) Claimants filed an amended motion, additionally arguing that "the alleged crimes on which Plaintiff bases its claim for forfeiture did not in fact occur." (Notice of Motion 1, ECF No. 42.) In opposition, the Government argues that Claimants' motion is premature because the Government has not yet had the opportunity to conduct discovery. (ECF No. 35.) The Court agrees. The parties have not yet engaged in discovery under the Civil Rules, and district courts should not grant summary judgment until a non-movant has had an adequate opportunity for discovery. At this stage in the proceedings Claimants' motions for summary judgment are premature.

13

## V. Conclusion

For the reasons set forth above, the Government's motion for summary judgment to strike the claims of Gengwu and 52 BD is denied, and Claimants' motion and amended motion for summary judgment are denied as premature. An order consistent with this Opinion will be entered.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2015