# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>REAL PROPERTY LOCATED AT 8 DRIFT STREET, NEW BRUNSWICK, NEW JERSEY, *et al.*,<br><br>*Defendant.* | Civil Action No.: 14-cv-03587 (PGS)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion for a pretrial order filed by Claimants Gengwu Qui ("Gengwu"), 52 BD, Inc. ("52 BD"), and TravelHome 1405, LLC ("TravelHome") (collectively, "Claimants") and on a cross-motion for summary judgment filed by Plaintiff United States of America ("Plaintiff" or the "Government"). This is a civil action *in rem* for the forfeiture of certain real and personal property pursuant to 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C). Claimants are seeking a pretrial order clarifying the scope of the Stipulation and Consent Order of Civil Forfeiture filed in this matter on May 27, 2016 (the "Consent Order") (ECF No. 68). (ECF No. 99). The Government opposes Claimants' motion for a pretrial order and cross moves for summary judgment. (ECF No. 107). The Court has jurisdiction over this forfeiture action commenced by the Government under 28 U.S.C. § 1345; and over this action for forfeiture under 28 U.S.C. § 1355(a).

## BACKGROUND

The Government seeks forfeiture of certain real property and currency from three bank accounts, which are alleged to be the unlawful proceeds traceable to the transportation,

transmittal, or transfer of money from China to the United States by Gengmin Qui ("Gengmin"), that he knew was stolen, converted, or taken by fraud, in violation of criminal law provisions 18 U.S.C. §§ 2314, 1956, and 1957.

Gengwu, 52 BD, and TravelHome filed verified claims in this matter asserting an interest in the property at issue. (*See* ECF Nos. 14, 16, 22). Specifically, Claimant Gengwu, the brother of Gengmin, asserts an interest in the real property located at 1405 South Ocean Boulevard, Myrtle Beach, South Carolina (the "Myrtle Beach Property"), and in the currency in the following bank accounts: (1) Cathay Bank account number 665931796, held in the name of 52 BD ("52 BD 1796"); (2) Cathay Bank account number 675981237, held in the name of Gengwu Qiu ("Gengwu 1237"); and (3) Cathay Bank account number 665934436, held in the name of Gengwu Qiu ("Gengwu 4436"). (Verified Claim of Gengwu Qiu ("Gengwu Claim") ¶¶ 2-5, ECF No. 14). Claimant 52 BD, through Gengwu, the sole owner since September 5, 2011, asserts an interest in the currency seized from the 52 BD 1796 account. (Verified Claim of 52 BD, Inc. ("52 BD Claim") ¶¶ 2-3, ECF No. 16). Claimant TravelHome, through Judy Tang, a member and the manager of TravelHome, asserts an interest in the Myrtle Beach Property as the legal and record owner of the real property. (Verified Claim of TravelHome 1405, LLC ("TravelHome Claim") ¶¶ 2-3, ECF No. 22). The property interests described in this paragraph are referred to in this memorandum as the "defendant properties."

As stated above, the Government asserts that the defendant properties are subject to forfeiture because they are proceeds traceable to Gengmin's alleged criminal activity. (*See generally* Complaint, ECF No. 1). In this case, the vast majority of material facts are in dispute.[1]

---

[1] Due to Claimants' numerous objections, references to Government's Statement of Material facts are <u>disputed</u>, unless otherwise indicated.

(*See generally* Responses of Claimants Gengwu Qui, 52 BD Inc., and TravelHome 1405, LLC to Plaintiff's Statement of Material Facts, ECF No. 110-1). According to the Government, the criminal activity occurred in connection with Gengmin's collection and disbursement of a value added tax ("VAT") refund that was imposed by the Government of China.

Evidently, I.M. Skaugen ("Skaugen"), a Norwegian company, contracted with Taizhou Wuzhou Shipbuilding Industry Co., Ltd. ("Wuzhou") to build three ships for Skaugen. (Government's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Govt's SMF") ¶ 1, ECF No. 107-2). Certain material and equipment used in the construction of the ships were subject to VAT. (*See id.* ¶ 2). Under the contract, Skaugen was entitled to receive a portion of the VAT refund that resulted from the material and equipment purchased to build the ships. (*See* Second Declaration of Peter W. Gaeta, Ex. B, Ship Building Contract, Article 1.4 at QIU-00400600, ECF No. 107-5).

Since the Chinese government does not assess VAT on goods that are exported, it reimburses VAT to sellers in the supply chain that have already paid into the VAT once it recovers proof that the goods were exported. (Compl. ¶ 14; Govt's SMF ¶ 2). A business practice in China is to retain an import/export broker: to apply for a VAT reimbursement; and to subsequently transfer the VAT refund to the appropriate party. In this case, Skaugen and Wuzhou contracted with Zheijang Changda Import and Export Co., Ltd. ("Changda") to act as broker. (Govt's SMF ¶¶ 1, 3). Changda is controlled by Gengmin. (*Id.* ¶ 1). Changda's responsibilities as broker allegedly included, *inter alia*, the accounting for the inventory of materials subject to the VAT. (*Id.* ¶ 2). This type of accounting is generally maintained in a ledger format known as a "redbook." (*Id.*). Once a ship was constructed and exported, Changda was contractually bound to apply for a reimbursement of VAT, which was to be reimbursed by

the Chinese government directly to the broker (*i.e.*, Changda). (*See id.*). Changda was then responsible for distributing the refund to the appropriate party under the contract (*i.e.*, Skaugen). (*See* Ship Building Contract, Article 1.4).

Upon the completion and delivery of the first ship to Skaugen in March 2009, Changda sought and obtained from the Chinese government a VAT reimbursement of approximately $4 million. (Govt's SMF ¶ 8). Per the contract, Changda made a disbursement of the VAT refund to Skaugen. (*Id.* ¶ 9). It is undisputed that Changda complied with all requirements as the import/export broker concerning the delivery of the first ship and made the appropriate transfers of the VAT refund. (*Id.*).

In October 2009, the second ship was delivered to Skaugen; however, Changda never remitted any portion of the VAT refund to Skaugen. (Compl. ¶¶ 18, 23).[2] On or about January 25, 2010, the VAT refund of approximately $3.7 million was transferred from the Government of China to an account at the Agricultural Bank of China ("ABC") in Changda's name. (Govt's SMF ¶ 21). In February 2010, Gengmin, as principal of Changda, transferred approximately $1.7 million to a bank account in the United states held in the name of BD Global Corp. ("BD Global"), a company formed by Gengmin ("BD Global 6099"). (*Id.* ¶ 23). Subsequently, the monies were completely transferred out of the BD Global 6099 account; and then transferred among several bank accounts in the United States and used to purchase the Myrtle Beach Property described above, *inter alia*. (*See* Compl. ¶¶ 25, 28-66).

---

[2] In May 2010, the third ship was completed and available for delivery. Delivery, however, was delayed because Changda had not assisted with the customs and export requirements. Skaugen resolved the customs issues without Changda, and the third ship was delivered in September 2011. (Compl. ¶ 24).

4

Gengwu and Chun Yan, the brother and sister of Gengmin, contend that none of their assets can be traced to the funds that Gengmin allegedly acquired by fraud. It is undisputed that in November 2008, Gengmin transferred all of his interest in Taizhou City Bid Da Industrial Trading Co., Ltd. ("Bi Da") to Gengwu and Chun Yan. (Govt's SMF ¶ 7). On or about June 8, 2011, Gengwu and Chun Yan sold Bi Da for $2.3 million. (*Id.* ¶ 33). Through a series of transactions, these funds were transferred from China to the United States via Dubai, United Arab Emirates. (*Id.*). It is undisputed that the funds were deposited into a business checking account ending in 6610 held by East International, Inc. ("East International 6610"), a company incorporated by Gengmin with an address in South River, New Jersey. (*Id.* ¶¶ 29, 33). It is undisputed that between June and July 2011, approximately $2,555,850 was received into the East International account from an account of Green Stem Trading LLC located in Dubai. (*Id.* ¶¶ 34, 35). Subsequently, the monies were allegedly transferred to the accounts of either Gengmin or Gengwu, or companies they controlled, and used to purchase real and personal property in the United States. (*See id.* ¶¶ 35, 36, 37, 38, 43).

In opposition, Claimants contend that there are three "principal disputes of fact" arising from the Government's Statement of Material Facts:

- Claimants dispute whether any portion of the VAT refund transferred into the United States had been stolen, converted, or taken by fraud;

- Claimants dispute whether Skaugan was entitled to receive the entire VAT refund; and

- Claimants dispute whether the funds that Gengwu transferred into the United States included any portion of the VAT refund.

(Claimants' Opp. Br. at 4, ECF No. 110). In addition, to rebut the Government's Statement of Material Facts, Claimants filed the Declaration of Claimant Gengwu Qui ("Gengwu Decl."). Among other things, the Gengwu Declaration states that Gengwu "was not involved in any way

5

in the sale of the ships or the application for the refund"; he never "had an interest in Changda"; and "no portion of the VAT refund was transferred to Gengwu or to any company controlled by Gengwu." (Gengwu Decl. ¶¶ 23, 24, ECF No. 110).

On July 17, 2014, a federal grand jury returned a 38-count criminal indictment charging Gengmin with conspiring to transport stolen property across state lines, with interstate transportation of stolen property, with conspiring to launder money and engage in transactions in criminally derived property, and with engaging in monetary transactions in criminally derived property. *United States of America v. Gengmin Qiu*, 14-cr-401 (PGS), ECF No. 21. However, on May 26, 2016, Gengmin pled guilty to only a one-count superseding information that charged him with criminal contempt in violation of 18 U.S.C. §§ 402 and 2. *Id.*, ECF No. 143.

## LEGAL STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey*

*Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

"These [summary judgment] standards are applicable when deciding a summary judgment motion in a forfeiture action." *U.S. v. 2000 Toyota Celica*, No. CV 04-3063 LRS, 2005 WL 1502902, at *4 (E.D. Wash. June 23, 2005) (citation omitted); *United States v. Two Real Properties Situated in Bluefield*, No. CIVA 1:06-0532, 2009 WL 3181453, at *3 (S.D.W. Va. Sept. 29, 2009); *United States v. Eleven Vehicles*, 836 F. Supp. 1147, 1151 (E.D. Pa. 1993).

In civil forfeiture cases, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *United States v. $7,599,358.09*, 953 F. Supp. 2d 549, 557 (D.N.J. 2013). Under the relevant forfeiture statute—18 U.S.C. § 981—property is subject to forfeiture if a crime occurred and there is a "substantial connection between the property and [that] offense." *See* 18 U.S.C. § 983(c)(3). Under the present circumstances, the Government satisfies the preponderance of the evidence standard by establishing that the "relevant facts are more likely true than not." *Two Real Properties Situated in Bluefield*, 2009 WL 3181453, at *3 (citations omitted).

In sum, here, the Government in not entitled to summary judgment because there are genuine disputes of material fact as to whether the defendant properties are subject to forfeiture. (*See* Government's Moving Br. at 25, ECF No. 107-1).

7

## ANALYSIS

### I. GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

In order to be entitled to summary judgment in this civil forfeiture proceeding under 18 U.S.C. § 981, the Government must demonstrate by a preponderance of the evidence that the defendant properties are subject to forfeiture. *See* 18 U.S.C. § 983(c)(1). In other words, the evidence adduced in connection with the instant motion must be such that "no reasonable jury could fail to find the Government had established both that a crime occurred and that the defendant property had the required nexus to the crime." (Government's Moving Br. at 24 (collecting cases)). Indeed, "the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C. § 983(c)(2).

In this case, the Government contends that the defendant properties are subject to forfeiture because they are proceeds with a nexus to Gengmin's alleged criminal conduct. "Under the civil forfeiture statute, 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to the forfeiture." *United States v. $72,050.00 in U.S. Currency*, 587 F. App'x 241, 243 (6th Cir. 2014) (citing 18 U.S.C. § 981(a)(2)). Courts generally apply a "but for" test to determine whether proceeds are forfeitable. *See, e.g., United States v. Farkas*, 474 F. App'x 349, 359 (4th Cir. 2012) (collecting cases); *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 207 (D.D.C. 2014). Under that test, "funds are considered proceeds and therefore deemed forfeitable if 'a person would not have [the funds] *but for* the criminal offense.'" *Id.* (citation omitted) (emphasis in original).

The Government specifically argues that the defendant properties are proceeds traceable to Gengmin's violation of three criminal statutes—18 U.S.C. § 2314, 18 U.S.C. § 1956, and 18

8

U.S.C. § 1957. (Compl. ¶¶ 29, 30). Again, in order to be entitled to summary judgment, the Government is required to establish beyond a preponderance of the evidence, that Gengmin violated these laws and that the defendant properties are traceable to those offenses.

To provide an overview of the three criminal statutes allegedly violated by Gengmin; first, 18 U.S.C. § 2314 makes illegal the interstate transportation of property that was stolen, converted, or taken by fraud. *Id.*; *see also United States v. Wright*, 363 F.3d 237, 244 (3d Cir. 2004). Second, in order to establish a violation of 18 U.S.C. § 1956(a), the Government must demonstrate: (1) that Gengmin conducted (or attempted to conduct) a financial transaction, which affected interstate commerce; (2) that Gengmin conducted the financial transaction with the proceeds of a specified unlawful activity; (3) that Gengmin knew the transaction involved the proceeds of some form of unlawful activity; and (4) that Gengmin intended to promote the carrying on of the specified unlawful activity; or Gengmin conducted the financial transaction with knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the specified unlawful activity. *See* Third Circuit Model Criminal Jury Instructions, 6.18.1956A. And, third, 18 U.S.C. § 1957 generally prohibits the knowing engagement or attempted engagement in monetary transactions in criminally derived property of a value greater than $10,000 that is derived from unlawful activity. *Id.*

The Government argues that the undisputed facts establish that the defendant properties are linked to Gengmin's violation of the foregoing criminal laws. Specifically, the defendant properties, the Government contends, are the direct and indirect proceeds of Gengmin's "scheme to defraud Skaugen by stealing an approximately $3.6 million VAT [refund] payment he was not entitled to retain." (Government's Moving Br. at 28-32; *see also* Government's Reply Br. at 4-5,

ECF No 113). The "scheme" allegedly violated of 18 U.S.C. § 2314 because Gengmin purportedly knew these funds were stolen when he transferred them from China to the United States. (*Id.*). The Government furthers: "The transactions of direct and indirect proceeds between accounts held in the names of various companies and individuals associated with Gengmin were meant to conceal and disguise the nature and source of the VAT theft proceeds," in violation of the money laundering statutes (18 U.S.C. §§ 1956 and 1957). (*See id.* at 32-36).

To show how Gengmin perpetrated this "methodical scheme" (Government's Reply Br. at 4), as well to illustrate the complicated web of transactions allegedly intended to conceal and disguise the illegal proceeds, the Government primarily relies on the allegations set forth in its Complaint and the "Government's Response to the Court Ordered Interrogatory on April 16, 2016" (the "Interrogatory Response") (ECF No. 107-6).[3] The Interrogatory Response was provided by a Special Agent of the Federal Bureau of Investigation and purports to provide a lengthy narrative describing Gengmin's unlawful "disbursement of the second value added tax of approximately $3,671,030.65." (*See generally id.*).

In opposing summary judgment, Claimants argue that the Government has failed to demonstrate that Gengmin transferred into the United States money derived from the VAT refund "knowing that the money had been stolen, converted, or taken by fraud." (Claimants' Opp. Br. at 13-18). At most, Claimants argue, Gengmin committed a breach of contract but not theft, conversion, or fraud. (*Id.* at 18-21). Claimants also contend that the Government cannot trace the VAT refund for the second ship to the defendant properties (*id.* at 24-27); and argue that the funds

---

[3] Claimants, however, raise a factual and legal dispute as to whether the Government properly verified these documents. (Claimants' Sur-reply at 9-12, ECF No. 120). Since the present motion will be denied for the reasons set forth herein, this argument shall be adjudicated in subsequent motion practice, if at all.

10

that Gengwu transferred into the United States did not include any portion of the VAT refund for the second ship (*id.* at 27-31).

After carefully reviewing the submissions of the parties, and in considering the arguments set forth by counsel on the record on January 21, 2020, there are genuine issues of material fact that preclude summary judgment. *See Celotex*, 477 U.S. at 322-23. For example, Claimants submit that the Government's motion presents "deeply flawed theories" regarding how it traces Gengmin's alleged criminal conduct to the defendant properties. (Sur-reply at 5-7). Specifically, Claimants argue that the Government failed to account for approximately $1.6 million of the VAT refund that Changda was lawfully entitled to retain when attempting to trace Gengmin's alleged scheme to the defendant properties. (*See id.*).

Moreover, Claimants filed the Gengwu Declaration allegedly establishing, *inter alia*:

1. The money Gengwu transferred from his account at Agricultural Bank of China into the United States was money that he had accumulated from his business activities, and all of it was his money. None of the money that Gengwu transferred was money that Gengmin had given or transferred to Gengwu.

\* \* \*

3. Changda, Gengmin's company, received the VAT refund. Gengwu has never had an interest in Changda, and no portion of the VAT refund was transferred to Gengwu or any company he controlled.

(Claimants' Opp. Br. at 28 (citing Gengwu Decl. ¶¶ 11, 18, 27)). In addition to these specific passages, the Gengwu Declaration purports to raise other factual disputes regarding the nexus between Gengmin's alleged criminal conduct and the defendant properties in which Gengwu maintained an interest.

In short, at present, summary judgment cannot be entered in favor of the Government, in light of the factual disputes raised by Claimants. Indeed, the record is replete with disputed facts. (*See, e.g.*, Responses of Claimants Gengwu Qui, 52 BD Inc.,

and Travelhome 1405, LLC to Government's Statement of Material Facts, ECF No. 110-1 (disputing nearly every material fact)). Accordingly, the Court denies the Government's cross-motion for summary judgment.

## II. CLAIMANTS' MOTION FOR A PRETRIAL ORDER CLARIFYING THE SCOPE OF THE CONSENT ORDER

Claimants move under Fed. R. Civ. P. 16 for a pretrial order clarifying the scope and legal effect of the Consent Order. (ECF No. 99). "Rule 16 governs the scheduling and management of pretrial conferences. The purpose of the rule is to provide for judicial control over a case at an early stage in the proceedings" to streamline the trial process. *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990); *see also* Fed. R. Civ. P. 16(a).

Specifically, "Rule 16 addresses pretrial conferences, pretrial orders, and the activities that courts may require as part of the pretrial case management process." Rule16.Pretrial Conferences; Scheduling; Management, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 16. Regarding pretrial orders, Rule 16(d) states that "[a]fter any conference under this rule, the court should issue an order reciting the action taken." Fed. R. Civ. P. 16(d); § 1526Procedural Aspects of the Pretrial Conference—Pretrial Orders, 6A Fed. Prac. & Proc. Civ. § 1526 (3d ed.).

Here, Claimants' motion for a pretrial order to clarify the scope of the Consent Order does not fall within the parameters of Rule 16. That is, Rule 16 is a case management tool—not a tool to decide substantive legal issues. *See* Fed. R. Civ. P. 16. "The intent and spirit of Rule 16 is to allow courts to actively manage the timetable of case preparation so as to expedite the speedy disposition of cases." *Chiropractic All. of New Jersey v. Parisi*, 164 F.R.D. 618, 620 (D.N.J. 1996) (citations omitted).

Finally, in any event, the Court has difficulty in discerning the utility of this motion, as both parties agreed at oral argument that no matter how the Court were to rule on this application, Claimants' claims with respect to the defendant properties should remain pending before the Court. (*See* Govt's Moving Br. at 22). Accordingly, for all of these reasons, Claimants' motion under Rule 16 is denied.

## CONCLUSION

Based on the foregoing facts and law, Claimants' motion for a pretrial order (ECF No. 99) is **DENIED**; and the Government's cross-motion for summary judgement (ECF No. 107) is **DENIED**.

## ORDER

**THIS MATTER** having come before the Court on Claimant Gengwu Qui's ("Gengwu"), 52 BD, Inc.'s ("52 BD"), and TravelHome 1405, LLC's ("TravelHome") (collectively, "Claimants") motion for a pretrial order (ECF No. 99) and on a cross-motion for summary judgment filed by Plaintiff United States of America (the "Government"); and the Court having carefully reviewed and taken into consideration the submissions of the parties, including the arguments set forth by counsel orally on January 21, 2020; and for the foregoing reasons; and for good cause shown;

**IT IS** on this 20 day of February, 2020,

**ORDERED** that Claimants' motion for a pretrial order (ECF No. 99) is **DENIED**; and it is further

**ORDERED** that the Government's cross-motion for summary judgment (ECF No. 99) is **DENIED**.

_____
PETER G. SHERIDAN, U.S.D.J.