UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br><br>v.<br><br>REAL PROPERTY LOCATED AT 8 DRIFT STREET, NEW BRUNSWICK, NEW JERSEY, *et al*,<br><br>*Defendant.* | Crim. Action No.: 3:14-cv-3587<br><br>**MEMORANDUM AND ORDER** |

Before the Court are the government's motion to voluntarily dismiss its forfeiture complaint as to certain defendants in rem, (ECF No. 139), and a cross-motion for release/disbursement of assets/funds and payment of attorneys' fees and costs, (ECF No. 146). Because of the perplexing nature of the issues presented by these motions, several conferences were held with the parties including the March 14, 2022 conference to an alternative approach suggested by the Court in a January 20, 2022 letter. (ECF No. 159). In light of the March 14, 2022 conference, the Court will grant the government's motion to dismiss, deny the cross-motion as it pertains to release of the funds, and award Gengwu's counsel a charging lien which may be collected in a separate proceeding.

1

# I.

In June 2014, the Government indicted Gengmin Qiu (Gengmin) for transportation of stolen goods, 18 U.S.C. § 2314; money laundering, 18 U.S.C. § 1956; and engaging in monetary transactions in property derived from unlawful activity, 18 U.S.C. § 1957. (Complaint ¶¶ 1-6, 12, ECF No. 1). By way of background, Gengmin allegedly stole and converted funds that belonged to others and transported the funds to the United States. (Indictment, Count 1, ¶ 1). Evidently, Gengmin allegedly received a rebate in the amount of $3.7 million from the government of China, and he was obligated to remit said amount to a third party. (Indictment, Count 1, ¶ 4). Instead, he transferred the amount to a personal account in the United States. (Indictment Count 1, ¶ 4). Thereafter, Gengmin allegedly transferred by wire some of the rebate funds to his brother Gengwu Qiu (Gengwu) which are the subject of this forfeiture action. None of the above facts have been proven and Gengmin pled guilty on an information charging him with a misdemeanor for criminal contempt. During the Initial Prosecution, this forfeiture action was initiated to capture the proceeds of the alleged criminal activity. Within the forfeiture action, the Government alleges that Gengwu had acquired a portion of the Forfeited Proceeds from Gengmin including:

- Real property located at 1405 South Ocean Boulevard, Myrtle Beach, Horry County, South Carolina, owned by TravelHome 1405, LLC ("TravelHome");[1]

- $4,590.25 in United States currency seized from Cathay Bank Account Number 665941796, held by 52 BD, Inc. ("52 BD");

- $48,854.89 in United States currency seized from Cathay Bank Account Number 675981237, held by Gengwu; and

- $362,186.67 in United States currency seized from Cathay Bank Account Number 665934436, held by Gengwu.

(Certification of AUSA Sarah Devlin ¶ 2, ECF No. 139-1). Evidently, Gengwu is the sole owner of 52 BD, and owns a 90% stake in TravelHome.[2] (Brief in Support of Claimant's Amended Motion for Summary Judgment 10, ECF No. 42-17). Since the U.S. Marshals sold the TravelHome real property, the total amount of the proceeds equals $1,120,971.02 (Forfeited Proceeds).

So, the long and short of these motions is that the Government is seeking to end and dismiss the forfeiture action, and to return the Forfeited Proceeds to

---

[1] The South Carolina property was sold in December 2015 per an order of the U.S. Bankruptcy Court in South Carolina, and the sale netted proceeds of $705,339.21, which were seized pursuant to a warrant issued by this Court.

[2] While 52 BD and TravelHome are distinct clients, 52 BD is wholly owned by Gengwu and that Gengwu owns a controlling stake of TravelHome. Gengwu's counsel indicated at a November 29, 2021, conference that he has been unable to communicate with the registered agents for 52 BD and TravelHome or the minority shareholder of TravelHome.

Gengwu. There is a motion to transfer the Forfeited Proceeds from the U.S. Marshal's account to the attorney trust account maintained by Gengwu's counsel, and a motion to award attorney's fees to Ingelsino, Webster, Wyciskala, Taylor, LLC (Gengwu's counsel).

To further confuse the facts, Gengwu is missing, at least to the extent that Gengwu's counsel has been unable to communicate with him. It has been represented to the Court that Gengwu is allegedly incarcerated in the People's Republic of China, (ECF No. 139, ¶ 12), but the parties to this action do not know the location of the penal institution or when, and if, Gengwu will be released. Gengwu's last known residence is in Taizhou, China. As the government mildly put it in their brief, "due to the unavailability of Gengwu . . . the parties have been unable to move toward any meaningful disposition of his claims." (ECF No. 139, ¶ 13). Based on this predicament, the Government seeks to dismiss the forfeiture complaint as to the Forfeited Proceeds claimed by Gengwu, (ECF No. 139), and Gengwu's counsel seeks this Court to approve its legal fees, and to disburse that amount from the Forfeited Proceeds (ECF No. 146-1).

## II.

The government moves to voluntarily dismiss Gengwu's assets from the civil forfeiture action under Fed R. Civ. P. 41(a)(2). (Government's Motion to Dismiss, ECF No. 139). The Rule provides in relevant part: "an action may be

dismissed at the plaintiff's request only by court order, on terms that the court considers proper. .... Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed R. Civ. P. 41(a)(2). Within the Third Circuit, voluntary dismissals are granted liberally. *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990); *Morano v. BMW of N. Am.*, No. 12-606, 2015 WL 3660324, at *3 (D.N.J. Jun. 11, 2015). Denial of a voluntary motion to dismiss is only appropriate where the non-moving party will be prejudiced by the dismissal. *Andreozzi v. Warden McKean Fed. Corr. Inst.*, 828 Fed. Appx. 141, 145 (3d Cir. 2020). But district court has "broad discretion" in deciding the "proper" terms of dismissal. *Carroll v. E One Inc.*, 893 F.3d 139, 152 (3d Cir. 2018).

Ordinarily, when a forfeiture action is voluntarily dismissed, the property is returned to the owner. *See United States v. Bernard*, 537 Fed. Appx. 72, 74 (3d Cir. 2013). Unfortunately, this cannot occur here because "the parties have been unable to move toward any meaningful disposition of the Forfeited Proceeds due to unavailability of Gengwu." (ECF No 139 ¶13).

To cure this issue regarding the disposition of the Forfeited Proceeds, Gengwu's counsel advances the proposition that the assets be held in its trust account until Gengwu is located, or, alternatively, it may disburse the Forfeited Proceeds if it is served with a court order directing it to release the funds. The

5

Court is skeptical about this approach for two reasons: (1) the uncertain status of the attorney-client relationship between Gengwu's counsel and Gengwu, and (2) the reliance of Gengwu's counsel upon a defective power of attorney allegedly signed by Gengmin dated December 21, 2016 (discussed below).

### III.

It is hornbook law that an attorney has an ongoing duty to communicate with his client. The attorney-client relationship must be an "aware, consensual relationship." *In re Palmieri*, 385 A.2d 856, 859 (N.J. 1978); *see also Cafaro v. HMC Int'l, LLC*, No. 07-2793, 2012 WL 4857763 at *9 (D.N.J. Oct. 11, 2012). To that end, an attorney has a duty to communicate with their client. New Jersey Rule of Professional Conduct (RPC) 1.4. The duty to communicate is "paramount." *Delaney v. Dickey*, 242 A.3d 257, 269 (N.J. 2020). This duty affords the client an opportunity to "make informed decisions regarding the representation." *Id.* When an attorney cannot fulfill that duty, "the representation will result in violation of the Rules of Professional Conduct," and the attorney must "withdraw from the representation." RPC 1.16(a) (emphasis added).[3] When a client disappears, an attorney "must make a reasonable or diligent effort[] to locate his or her client."

---

[3] *Campbell v. Woodward*, No. 1202750, 2018 WL 3611059, at *2 (D.N.J. Jul. 26, 2018); *see also United States v. Easter*, 975 F.3d 318, 324 (3d Cir. 2020); *Baker v. Camarillo*, No. 17-12095, 2021 WL 4099876, at *4 (D.N.J. Sept. 9, 2021); *State v. Anderson*, 256 A.3d 981, 993 (N.J. 2021).

6

*Garrett (formerly Matisa) v. Matisa*, 927 A.2d 177, 180 (N.J. Super. Ct. Ch. Div. 2007). Here, Gengwu's counsel has apparently attempted to communicate with Gengwu, without success. (Declaration of Denis Driscoll ¶14, ECF No. 146-2).

Although Gengwu's counsel has been cooperative and professionally diligent, the request to authorize the deposit of a significant sum of Forfeited Proceeds into Gengwu's counsel's trust account is dubious in light of the above law. In addition, the Court has an ongoing obligation to return the Forfeited Proceeds to the owner – not to a third party law firm which has lost contact with its client. *See United States v. Bernard*, 537 Fed. Appx 72 (3d Cir. 2013).

## IV.

The second area of concern is Gengwu's counsel reliance on a power of attorney from Gengwu to Gengmin. Gengwu's counsel argues that although it has been unable to communicate with Gengwu, it is relying on a power of attorney dated December 21, 2016, that empowers Gengmin to act on behalf of Gengwu as an attorney-in-fact. Counsel submits a document that is allegedly signed by both Gengmin and Gengwu, but it is not notarized. It reads:

> My name is Gengwu Qiu. Since I my (sic) employee Guo Lin, who is also known as Edith, is (sic) already left her post, and thus no longer represents any of my rights. The original power of attorney, which is signed on November 21st, 2013, is abolished.[4] Therefore I

---

[4] The 2013 power of attorney form has not been provided.

7

> designate Gengmin Qiu as my agent to (sic) dealing with
> my properties and any problems about legal affairs.

(Letter from Denis Driscoll Dated Nov. 22, 2021, ECF No. 154). To prove the validity of the power of attorney dated December 21, 2016, Gengwu's counsel provides another power of attorney dated March 15, 2017, purportedly authorizing Gengmin to act on Gengwu's behalf in a bankruptcy proceeding in South Carolina, and Gengwu's Counsel proffers it as proof of Gengwu's handwriting. (*Id.*). Like the December 21, 2016 document, the March 2017 document is not notarized. (*Id.*).

In New Jersey, the validity of a power of attorney is governed by N.J.S.A. § 46:2B-8.9, which provides: "A power of attorney must be in writing, duly signed and acknowledged in the manner set forth in R.S. 46:14-2.1." To acknowledge an instrument, the maker (Gengwu) must come before an officer (attorney or notary) and acknowledge it was executed as the maker's own act. *Id.* Without the acknowledgment, the power of attorney is null and void. *Hollander v. Abrams*, 132 A. 224, 227 (N.J. Ch. 1926); *see also AMB Property, LP v. Penn America Ins. Co.*, 14 A.3d 65, 71 (N.J. Super. Ct. App. Div. 2011).

Generally, notarization protects against fraud. *Kendall v. Balcerzak*, 650 F.3d 515, 526 (4th Cir. 2011). This hits home here, in light of Gengmin's plea to criminal contempt, a misdemeanor, before this Court. (Declaration of AUSA Sarah Devlin at ¶9); (Judgment, *United States v. Gengmin Qiu*, No. 14-401, ECF

8

No. 143). Conformance with the statute is essential; and since the power of attorney is not notarized, it is null and void.

### V.

Rather than releasing the Forfeited Proceeds to Gengwu's counsel, it is more appropriate to deposit the Forfeited Proceeds with the United States District Court Clerk's Office subject to an appropriate application by Gengwu or an application by a third party proving control or ownership of the Forfeited Proceeds. This alternative is preferable for two reasons. First, rather than vesting Gengwu's counsel with ultimate authority over the Forfeited Proceeds, the disposition of the Forfeited Proceeds will be subject to independent judicial supervision. In addition, due process safeguards will be implemented by the Court, as opposed to unilateral decision-making by Gengwu's counsel. Second, the Forfeited Proceeds are better protected in the Court's custody. The Clerk will oversee the Forfeited Proceeds for five years, and thereafter the Forfeited Proceeds are transferred to an account known as Unclaimed Funds in the Department of the Treasury and are maintained there in future. 28 U.S.C. § 2042; *Guide to Judiciary Policy* § 1040.10-.20. On the other hand, giving control of the Forfeited Proceeds to Gengwu's counsel yields less transparency and exposes the Forfeited Proceeds to unforeseen business ramifications. For example, if the firm of Gengwu's counsel dissolves, the location of the Forfeited Proceeds may be difficult to track. As such, it is prudent

9

for the District Court Clerk to maintain jurisdiction over the Forfeited Proceeds rather than Gengwu's counsel. *Cf. Brass Smith, LLC v. RPI Indus.*, 827 F. Supp. 2d 377, 383 (D.N.J. 2011).

## VI.

Presently, there are two pending third parties who seek disbursement of a portion of the Forfeited Proceeds. They are: (1) the legal fee application filed by Gengwu's counsel in the amount of $240,835.73; and (2) an anticipated application by a bankruptcy trustee in an action captioned *Paul I. Krohn v. Gengwu Qiu*, No. 14-40374 (E.D.N.Y. Bankr. Filed Jan. 29, 2014).

Addressing the application of the Bankruptcy Trustee, the Trustee initiated an action against Gengwu in the above bankruptcy matter to prove that Gengmin illegally transferred a portion of the Forfeited Proceeds to his brother, Gengwu, in order to defraud creditors. To the best of my knowledge, that issue has not been determined, but the Bankruptcy Judge enjoined Gengwu's counsel from disbursing $409,000 of the Forfeited Proceeds, if Gengwu's counsel gains control of the Forfeited Proceeds. Instead, the Trustee may apply or move before this Court for disbursement of the Forfeited Proceeds.

Next, in looking at the application for legal fees filed by Gengwu's counsel, there are valid reasons to award legal fees from the Forfeited Proceeds. Most notably, Gengwu's counsel has vigorously labored for about eight years without

10

any payment, and it has diligently pursued the return of the Forfeited Proceeds on behalf of Gengwu. There have been many hearings before this Court, and Gengwu's counsel has always been prepared and zealously advocated for its client. The invoices have been reviewed, and they appear to be reasonable. Neither the United States Attorney nor the Bankruptcy Trustee in the above mentioned bankruptcy action object to the payment of the legal fee.

However, there are several issues which arise as to whether the Court may award and distribute legal fees to Gengwu's counsel. More specifically, (1) does the Court have subject matter jurisdiction; and (2) can this Court exercise personal jurisdiction over the client (Gengwu) where he has not been served or notified of the motion.

In a response to the first issue, "[A] federal court [may] invoke ancillary jurisdiction over an incident to a matter where it has acquired jurisdiction of a case in its entirety and, as an incident to the disposition of the primary matter properly before it. It may resolve other related matters . . . ." *United States v. Dunegan*, 251 F.3d 477, 478-79 (3d Cir. 2001). The invocation of ancillary jurisdiction is discretionary. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1965). Disputes over attorney's fees are especially well-suited for an invocation of ancillary jurisdiction. *Walker v. Pa. Dep't of Corr.*, 828 Fed. Appx. 118, 121 (3d Cir. 2020). But the exercise of ancillary jurisdiction is not absolute; "ancillary

11

jurisdiction over fee disputes between clients and former counsel" is appropriate "where resolution of the fee dispute enables the court to resolve the underlying action over which the court has jurisdiction." *In re Cmty. Bank N. Va. Mortg. Lending Practices Litig.*, 911 F.3d 666, 672 (3d Cir. 2018) (emphasis added). This is an area where the Court has ancillary jurisdiction, because the attorney's fees were incurred from Gengwu's Counsel's successful defense against a forfeiture action.

The second issue is whether it is appropriate to award fees where the client has not been served with notice. Gengwu's counsel argues that it has a right to a fee because attorneys have a common right and a statutory right to impose a lien on a client's property that is related to the representation of the attorney.[5] (ECF No. 146-1 at 13-14). Focusing on the common law, it has been held that an attorney lien "is a judicial device to protect the attorney's rights . . . to this end, the attorney is considered an equitable assignee of the judgment to the extent of his debt." *Republic Factors, Inc. v. Carteret Work Uniforms*, 133 A.2d 6, 11 (N.J. 1957). Despite the common law right of an attorney to a lien, the legislature enacted a statute creating such a lien. N.J. S.A. § 2A:13-5. The statutory lien codifies the

---

[5] Gengwu's counsel also seeks recovery of fees under a "common fund" doctrine, (ECF No. 146-1 at 11-13), but common funds are created in some class action lawsuits to compensate class members – something that has not occurred in this civil forfeiture litigation. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005).

common law lien; but it adds procedural safeguards. More specifically, the statutory lien requires counsel to institute an action and serve the client. *See In re MicroBilt Corp.*, 610 Fed. Appx. 169, 172 (3d Cir. 2015). One commentator has noted that the common law lien is "still a viable avenue for collection of a fee," because the Supreme Court of New Jersey "rendered judgment in favor of an attorney on the basis of such a lien . . . more than 40 years after the enactment of the statutory lien." *See* Michel, *New Jersey Ethics* § 37:1-4 (2021) (relying on *Republic Factors*, 133 A. 2d at 6). More recently, a law firm was awarded a common law lien in a divorce action where its client disappeared. *See generally Pernini v. Pernini*, No. A-2649-09, 2011 WL 4483489 (N.J. Super. Ct. App. Div. Jan. 18, 2011).[6] Notably, the law firm sought to be and was relieved from its representation. *Id.* at *1.

Although ancillary jurisdiction and the existence of a common law lien for attorney fees are adequate justification to award a legal fee, the fact that Gengwu has not received notice of the motion to award attorney's fees is troubling. Due process demands service and an opportunity to be heard, or alternatively a judicial finding that the client disappeared or is deceased. As such, the best course of

---

[6] In addition to the attorney lien, Gengwu's counsel may have a quantum meruit action. Michel, *New Jersey Attorney Ethics*, § 33:5-1(e); *see also Starkey v. Estate of Nicolaysen*, 796 A.2d 238 (N.J. 2002).

13

action[7] is to impose a lien on the Forfeited Proceeds equal to the value its attorney's fees; subject to an application by Gengwu' to object if he is located, or a judicial finding that Gengwu is missing or dead.

---

[7] Another alternative was for the law firm to post a bond equal to the legal fees, but Gengwu's counsel has advised that the cost of same is prohibitive.

## ORDER

**WHEREAS,** on July 26, 2021, the United States filed a motion for voluntary dismissal of the Verified Complaint for Forfeiture In Rem as to Certain Defendants In Rem in this action ("Motion to Dismiss") (ECF No. 139); and

**WHEREAS,** on October 1, 2021 claimants Gengwu Qiu, 52 BD, Inc., and TravelHome 1405, LLC ("Claimants"), filed a (1) Joinder with Plaintiff's Motion for Voluntary Dismissal of Complaint as to Defendants-Claimants Gengwu Qiu, 52 BD, Inc., and TravelHome 1405, LLC; and (2) Defendants-Claimants' Supplemental Cross-Motion for Release/Disbursement of Assets/Funds and Payment of Attorneys' Fees and Costs, and for such other and further relief as the Court deems just and equitable (the "Motion for Disbursement and to Award Attorney's Fees") (ECF No. 146); and

**WHEREAS,** the Court issued its Memorandum dated March 31, 2022; and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and,

**WHEREAS,** the Court recognizes the law firm of Ingelsino, Webster, Wyciskala & Taylor, LLC ("IWWT") has a common law attorney lien in the amount of $240,835.73 subject to Gengwu Qiu's right to due process; and for all of the foregoing reasons,

15

**IT IS** on this 31ˢᵗ day of March, 2022,

**ORDERED** that the government's Motion to Dismiss (ECF No. 139) is **GRANTED;** the following properties are **DISMISSED WITHOUT PREJUDICE** from this action:

   a. The real property located at 1405 South Ocean Boulevard, Myrtle Beach, Horry County, South Carolina (liquidated for $705,339.21 in United States currency) (USMS Seizure No. 3510140162);

   b. $4,590.25 in United States currency seized from Cathay Bank Account Number 665931796, held in the name of 52 BD, Inc. (USMS Seizure No. 3510140163);

   c. $48,854.89 in United States currency seized from Cathay Bank Account Number 675981237, held in the name of Gengwu Qiu (USMS Seizure No. 3510140164); and

   d. $362,186.67 in United States currency seized from Cathay Bank Account Number 665934436, held in the name of Gengwu Qiu (USMS Seizure No. 3510140165)

(collectively, the "Subject Properties," or as liquidated, the "Forfeited Proceeds"); and each party shall bear its own costs and fees; and

**IT IS FURTHER ORDERED** that the Motion for Disbursement and to Award Attorney's Fees (ECF No. 136) is **DENIED WITHOUT PREJUDICE**; and

**IT IS FURTHER ORDERED** that the United States Marshals Service shall distribute the Forfeited Proceeds in the total amount of $1,120,971.00 to the Clerk of the United States District Court for the District of New Jersey (Trenton vicinage) ("the Clerk"), which shall be deposited into the Registry of this Court and then, as soon as the business of his or her office allows, the Clerk shall deposit these funds into the interest-bearing Court Registry Investment System (CRIS) Liquidity Fund administered by the Administrative Office of the United States Courts as Custodian, pursuant to L. Civ. R. 67.1(a)(2); and

**IT IS FURTHER ORDERED** that the sum of money so invested in the interest-bearing CRIS Liquidity Fund shall remain on deposit until further order of this Court disbursing the Forfeited Proceeds pursuant to claims, liens and applications for payment, at which time the funds, together with interest thereon, shall be retrieved by the Clerk of Court and redeposited into the non-interest-bearing Registry of the Court for disbursement pursuant to further order of the Court; and

**IT IS FURTHER ORDERED** that the Custodian shall deduct the CRIS fee of an annualized 10 basis points on assets on deposit for all CRS funds for the management of investments in the CRIS; and

**IT IS FURTHER ORDERED** that a signed copy of this Order shall be personally served upon the United States Marshal for the District of New Jersey, the Clerk of Court, Chief Deputy of Administration, and Chief Deputy of Operations or Finance Manager; and

**IT IS FURTHER ORDERED** that IWWT shall have a common law attorney lien on the Forfeited Proceeds, subject to the rights of Gengwu Qiu, in the amount of $240,835.73 in accordance with this Court's findings in its Memorandum dated March 31, 2022, and during the hearing held on March 14, 2022; IWWT may apply to the Court to enforce its common law attorney lien once IWWT has provided Gengwu Qiu notice of its application in accordance with the rules of service under Fed R. Civ. P. 4(k)(1)(A) and New Jersey's long arm statute, New Jersey Court Rule 4:4-4; and

**IT IS FURTHER ORDERED** that, unless as otherwise provided by the Court, this Order shall be deemed effectively served on parties of record through the Court's electronic filing system; and

**IT IS FURTHER ORDERED** that the litigation shall continue against other parties to the forfeiture action:

18

a. Real property located at 8 Drift Street, New Brunswick, New Jersey;

b. Real property located at 17 Norton Road, East Brunswick, New Jersey;

c. All right, title, and interest in any and all shares of capital stock of 137 45th Avenue Tenants Corp. held in the name of Gengmin Qiu and in the proprietary lease for unit 6H, 137-77 45th Avenue, Flushing, New York, and all property traceable thereto; and it is

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to enforce this Order.

_____
PETER G. SHERIDAN, U.S.D.J.